IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIBEL RIVERA-VAZQUEZ,

Plaintiff,

v.

HOSPITAL GENERAL MENONITA, ET
AL.,

Defendants.

CIVIL NO. 10-1071 (CVR)

## OPINION AND ORDER

### INTRODUCTION

On February 1, 2010, plaintiff Maribel Rivera Vázquez (hereafter "plaintiff Rivera") filed a complaint against defendants Hospital Menonita-Aibonito (hereafter "Hospital Menonita") and Dr. Francisco Blanes Mayans (hereafter "Dr. Blanes"). Plaintiff Rivera's claims against these defendants are related to medical interventions by Dr. Blanes and the Hospital Menonita's actions or lack thereof, where Dr. Blanes held medical privileges and which plaintiff Rivera attended the Emergency Room on various occasions. Plaintiff's claims stem from the original medical intervention of February 6, 2008, when plaintiff was submitted to a pararoscopic cholecystectomy and thereafter complications which resulted from these defendants' failure to identify and properly treat the injury caused to her bile duct. Defendant Hospital Menonita is also claimed to have lacked the care and supervision required to identify the alleged medical malpractice and having discharged plaintiff Rivera on several occasions without the proper professional medical attention to her post-surgical condition. (Docket No. 1).

Defendants Hospital Menonita and co-defendant Dr. Blanes filed separate motions for summary judgment. Both defendants submit plaintiff Rivera's claims are time barred under the applicable Puerto Rico laws for the complaint was filed almost two (2) years after the initial surgical intervention performed on plaintiff on February 6, 2008. Defendants acknowledged that plaintiff's legal representative sent them letters on February 4, 2009, but claim the letters should not be considered to have tolled the one (1) year limitations period as an extrajudicial claim for there was no specific claims of economic or emotional damages or a request for payment from defendants.(Docket Nos. 71 and 76).

Co-defendant Hospital Menonita raised an alternative theory for summary adjudication regarding plaintiff's lack of evidence as to its tort liability. In essence, defendant Hospital Menonita contends plaintiff Rivera has failed to meet the burden to establish by competent medical evidence any act or omission of said hospital staff that deviated from the standard of care and, thus, may not be liable for any acts or omission of co-defendant Dr. Blanes.

Plaintiff Rivera filed her opposition to the dispositive motions submitting there was tolling of the time to file the complaint against defendants by the extrajudicial claims through separate letters timely sent to defendants. Plaintiff also claims Hospital Menonita is liable for her damages because it failed in its duties to her which is a matter to be assessed by the trier of facts. (Docket No. 82).

Defendants thereafter reinstated their positions in their replies, without any additional factual contention. The matter is now deemed submitted.

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 3

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[1]

Pursuant to the language of the applicable rule, as amended in 2010, the moving party bears the two-fold burden of showing that there is "no genuinely disputed" factual predicate.  Said party may also show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).  After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997).  A fact is deemed "material" if it potentially could affect the outcome of the suit.  Id.  Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

---

[1]  On April 28, 2010, the Supreme Court of the United States approved amendments to Federal Rule of Civil Procedure 56, effective December 1, 2010.   The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.  See Ophthalmic Surgeons, Ltd. v. Paychecx, Inc., 632 F.3d 31 (1st Cir. 2011).

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 4

At all times during consideration of a motion for summary judgment, Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

The moving party's uncontested facts and other evidentiary facts of record on an uncontested motion for summary judgment must still show that said  party would be entitled to summary judgment. See Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003). When a motion for summary judgment remains unopposed, the district court may grant summary judgment, if appropriate, although failure to oppose does not mean the summary judgment requested will be automatically granted.  Said request for summary judgment, even if unopposed,  must be scrutinized in accordance with rule governing such motions. See Perez-Cordero v. Wal-Mart Puerto Rico, 440 F.3d 531 (1st Cir. 2006).

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 5

## LEGAL ANALYSIS

**I.      Plaintiff's Claims are not Time Barred.**

**A.      Defendants' Uncontested Issues of Facts.**

**1.      Defendant Hospital Menonita.**

The uncontested factual issues related to plaintiff Rivera's claim being time barred, as submitted by Hospital Menonita, may be summarized as follows:

Plaintiff Rivera was subject to a surgical intervention by Dr. Blanes on February 6, 2008, after visiting him at his offices on February 4, 2008.  Plaintiff Rivera underwent a gall bladder removal through use of a laparoscope at Hospital Menonita of Aibonito by Dr. Blanes.  (Docket No. 73, ¶11-12, Exhibit 2, p. 42).

By October of 2008, while plaintiff was being treated in New Jersey, she knew something went wrong with the intervention and there was a need to correct it.  As such, by November/December of 2008, plaintiff Rivera was on notice that Dr. Blanes committed a medical malpractice for which the one-year statute of limitation should be considered to have started an accrued at the latest by December 31, 2008.  (*Id.*, Exhibit 1, pp. 62-63, 65, 66-73).

On February 4, 2009, plaintiff Rivera's legal representative sent a letter to Hospital Menonita indicating first, that plaintiff Rivera retained the legal services to represent her in a tort case based on medical-hospital malpractice.  Secondly, the letter stated its purpose was to inform Hospital Menonita as to the tolling of the one-year prescription period for filing a complaint.  Third, the letter indicated the complaint to be filed was to be based on the laparoscopy surgery performed on February 6, 2008 by Dr. Blanes at Hospital Menonita

and that the Hospital would be added as a defendant. The letter then explained the legal grounds to include the hospital as a defendant. The letter also mentioned plaintiff Rivera had suffered physical, emotional and economic damages. (*Id.*, Exhibit 4).

### 2. Defendant Dr. Blanes.

Dr. Blanes submits as uncontested that plaintiff Rivera sought medical treatment from him for abdominal pain on February 5, 2008 and was immediately hospitalized at Hospital Menonita. Plaintiff Rivera was thirty-years old at the time with a medical secretary degree, had practiced at Hospital Menonita-Barranquitas, and worked in the Maternity Ward as a ward clerk for two years. (Docket No. 76, Exhibit 1, pp. 13-14). Plaintiff also worked as a medical secretary from 2000-2008. (*Id.*, p. 16).

Dr. Blanes performed surgery, a cholecystectomy by laparoscope, on plaintiff on February 6, 2008, and she was discharged the following day. After leaving the hospital, plaintiff Rivera presented jaundice and stomach bloating for which she was again hospitalized on February 9, 2008. On February 16, 2008, plaintiff Rivera was submitted to a second surgery by laparoscope and an intra-abdominal drainage was placed. She was then discharged on February 25, 2008. (Docket No. 1, ¶¶ 13, 22, 23, 24, and 32).

On February 28, 2008, plaintiff went to the Emergency Room with severe abdominal pain, nausea, tachycardia, hypertension and anemia. She was admitted to Hospital Menonita for seven (7) days and was discharged on March 6, 2008. (*Id.*, ¶¶ 33 and 34).

On March 9, 2008, plaintiff redeveloped jaundice and severe abdominal pain, with vomiting and diarrhea and went to the Emergency Room. (*Id.*, ¶¶38 and 40). Dr. Blanes

ordered plaintiff Rivera to be hospitalized on March 31, 2008 and on April 2, 2008, she was submitted to a third surgery.  (*Id.*, ¶¶ 40 and 41).

On August 2008, plaintiff again developed jaundice and severe abdominal pain. She moved to Newark, New Jersey and received emergency treatment there where she underwent several corrective treatments, as well as another surgical intervention.  (*Id.*, ¶44).

Plaintiff Rivera was let known by a medical doctor in New Jersey that Dr. Blanes committed medical malpractice.  She was referred to Dr. Bale, treating physician, and Dr. Canaria, surgeon, in New Jersey and was informed at least by November/December of 2008 the physician who operated her in Puerto Rico had committed medical malpractice. (Docket No. 76, Exhibit 1, pp. 62-63 and 64-65).

On February 5, 2009, defendant Dr. Blanes received a letter from the legal representative of plaintiff Rivera notifying plaintiff would be presenting a complaint for the alleged damages suffered and plaintiff would claim for the injuries suffered. (*Id.*, Exhibits 2 and 3).

Thus, Dr. Blanes' request for summary disposition rests solely in that plaintiff Rivera's claim is time-barred for the Complaint was filed more than one-year after the alleged injury transpired and the letter received from plaintiff Rivera should be considered insufficient as an extrajudicial claim to toll the time period for the filing of the complaint.

Notwithstanding above detailed explanation contained in the letters sent by plaintiff to Hospital Menonita and Dr. Blanes and which are uncontested having been received, defendants claim the letters do not request the Hospital Menonita or co-defendant Dr.

Blanes to compensate plaintiff for the alleged damages mentioned or request for payment to plaintiff.  As such, they aver the letters did not toll the one year prescription period.

### B.  Plaintiff's Rivera Uncontested Issues of Facts.

Plaintiff Rivera's opposition states the claims against co-defendant Dr. Blanes are in regards to the initial surgery of February 2008, as well as for the several re-admissions and interventions wherein he failed to recognize his inability to correct the damage caused when in the initial surgery he failed to properly identify the cystic duct and cystic artery prior to clipping and dividing them.  Thereafter, Dr. Blanes also failed to make a timely diagnosis of the biliary leak, left a clip obstructing the common bile duct, and in attempting to repair the biliary duct used a procedure that deviated from the standard of care[2] (using the choledochoduodenostomy instead of the Roux en Y).[3]

Plaintiff Rivera admitted uncontested statements for purposes of summary judgment, except for those considered as not relevant to the issue of summary judgment. Thus, defendant Dr. Blanes' uncontested statements were mostly admitted ¶¶1-2, 8-11 and 12-30.  The sole pending legal argument as to Dr. Blanes refers to the letter for extrajudicial claim at issue.

Regarding plaintiff Rivera's claim being time barred, it is uncontested by the parties that prior to the one-year expiration period, that is, before the first surgery anniversary performed by Dr. Blanes, plaintiff's attorney sent a letter to defendants on February 4,

---

[2]  Plaintiff's expert Dr. Steven Swartz referred the procedure is used infrequently because it causes risk of stricture complications being the first time Dr. Blanes performed a biliary hepatic duct repair himself.  (Docket No. 82, ¶¶1.15 and 1.16).

[3]  The Roux-en-Y procedure as used to correct damages common bile duct. [Attachment "B"].  See note at 9.

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 9

2009.[4] The letter sent to Dr. Blanes informed plaintiff Rivera hired counsel to represent her "in a professional malpractice case against you." It also indicated that the "purpose of [the] letter is to inform you of this and interrupt the statutory term for the filing of a complaint for damages." The letter indicated Rivera continued at the time to manifest the symptoms resulting from the medical malpractice which caused grave emotional and financial damages to her, in addition to the physical suffering she faced on a daily basis. It further informed "that we will be filing a complaint for damages against you for professional malpractice and make a claim for the damages suffered by plaintiff Maribel Rivera Vázquez, as well as any other remedy which is appropriate in law." (Docket Nos. 76-1 and 80-1).

A second letter was directed on February 4, 2009 to Rubén Norat, Administrator of Hospital General Menonita de Arecibo and to Domingo Torres Zayas, Executive Director of said hospital. (Docket No. 73, Exhibit 4; Docket No. 94, Exhibit 6, translation of exhibit).

Similarly, the letter addressed by plaintiff's counsel to Hospital Menonita informed the undersigned attorneys were hired to represent Rivera "in a damage action for medical/hospital malpractice against Dr. Francisco Blanes Mayans and Hospital General Menonita." Likewise, it indicated the "purpose of [the] letter is to inform you of this and interrupt the statutory term for the filing of a complaint for damages." The letter describes the surgical intervention of February 6, 2008 and the effects. It stated plaintiff's conditions "resulted from the operation and the treatment provided by the physician and the staff of your Institution." It specifically announced plaintiff's intention to present a damage action

---

[4] Docket No. 76-2 is the letter sent by plaintiff's counsel to Dr. Blanes and Docket No. 80-1 presents the certified English translation of the letter dated of February 4, 2009 sent to Dr. Blanes. The certified translation of similar document sent to defendant Hospital Menonita appears at Docket No. 94-6.

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 10

against the Hospital, stating the action will be based on the failure of the Hospital to "make a careful selection of the physicians to which it has conferred privileges in your facilities" and for its failure to "adequately monitor Dr. Blanes' work and [his] courses of professional betterment." It explicitly states the lawsuit will claim damages caused by "the negligence of your employees in the treatment and care offered to Ms. Rivera, as well as any other negligence." The letter explained that the "notification of the intention to sue" is being sent to both Mr. Norat and Attorney Torres and in the event this was insufficient "to place the Corporation under advisement of the intention to sue" the attorneys requested that they be notified as to whom to direct the notice within the following five (5) work days. (Docket No. 73, Exhibit 4; Docket No. 94, Exhibit 6, translation of exhibit).

The above letters averred by plaintiff as extrajudicial claims were received by Dr. Blanes on February 5, 2009. The Hospital received its letter no later than February 5, 2009. (Docket No. 82, ¶10.7; Docket No. 73, ¶77). Plaintiff filed the instant complaint against defendants on February 1, 2010. (Docket No. 1).

**C.      Discussion: Claims against both Defendants are not Time Barred.**

Defendant Hospital Menonita and Dr. Blanes submit plaintiff Rivera's complaint should be considered time barred for having been filed more than one-year after the alleged medical malpractice took place inasmuch as the letters sent by plaintiff's legal representatives are insufficient to toll said time-period to file the complaint.

There are three (3) ways in which statutes of limitations can be tolled in a diversity case as the one at bar under relevant Puerto Rico law. The specific tolling provisions prescribed by Puerto Rican law applicable to the case at bar is:

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 11

Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor. Article 1873 of the Civil Code, P.R. Laws Ann. tit. 31, § 5303.

*See* Rodríguez Narváez v. Nazario, 895 F.2d 38 (1st Cir. 1990); Federal Insurance Co. v. Banco Popular, 750 F.2d 1095, 1098 (1st Cir. 1983); Ramírez de Arellano v. Alvarez de Choudens, 575 F.2d 315, 319 (1st Cir. 1978).

Under Puerto Rico's statute of limitations, in order to have a tolling effect, an extrajudicial claim must be precise and specific; a letter which specifies what plaintiffs are requesting but does not give specific notice of basis of lawsuit or merely states intention to file complaint is not sufficiently specific. Bonilla-Avilés v. Southmark San Juan, Inc., 992 F.2d 391 (1st Cir. 1993) (the notice letters to defendants were not included with the record and even if so an examination of the relevant criteria failed to show tolling).

The Puerto Rico Supreme Court's criteria application of extrajudicial claim in De León Crespo v. Caparra Center, 147 D.P.R. 797, 99 TSPR 24 (1999) (trans.) assists in explaining an extrajudicial claim sufficiency.[5] In De Leon Crespo, the Puerto Rico Supreme Court construed a letter from a claimant who refused a nominal settlement and added, "[w]e will promptly file the pertinent action in the Courts of Puerto Rico." *Id.,* Offic. Trans. at 6. The court found this language "not a model of perfection, but at least it met the minimum requirements for an extrajudicial claim." *Id.* at 8. It held therein the letter tolled the applicable statute. *See* Ramos-Baez v. Bossolo-López, 240 F.3d 92 (1st Cir. 2001).

In Santana-Castro v. Toledo-Dávila, 579 F.3d 109 (1st Cir. 2009) it was considered that, regardless of the difference in the amount of damages in the extrajudicial notice as the

_____

[5]  Plaintiff's arguments as to the statute of limitation and tolling, although legally sound, present incomplete citations of Puerto Rico's cases, for which we feel free to discuss our own selection of relevant state case law interpreting the issue. Plaintiff's arguments make reference to citations as "OJO PR CITE" or "OJO GET CITE." (Docket No. 82, p. 18).

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 12

one claimed in the complaint, no problem was raised because the letter to defendant was sufficient to give notice of a potential lawsuit for damages. *See Id*. ("Although the amount of damages differs in the two complaints, the allegation of damages in her state complaint gave the defendants the requisite 'fair notice that [they] might be called upon to defend a damages suit ….' ") (quoting Hernández del Valle v. Santa Aponte, 575 F.2d 321, 324 (1ˢᵗ Cir. 1978).

However, the extrajudicial claim must be identical to the claim actually filed in court, and it must seek the same form of relief, be based on the same facts, and be asserted against the same defendants as the subsequent lawsuit. *See* Nieves-Vega v. Ortiz-Quiñones, 443 F.3d 134 (1ˢᵗ Cir. 2006) (denying tolling for a letter to be considered an extrajudicial claim seeking only equitable relief did not toll the statute of limitations where the subsequent complaint also sought damages).[6]

It is uncontested plaintiff Rivera sent to both defendants respective letters regarding her intention to file suit for damages because of the surgical intervention, resulting malpractice and ensuing damages caused by Dr. Blanes.  As to defendant Hospital Menonita, plaintiff further added in her letter that the claims also arise from failing to select the physicians to whom privileges were granted at said facility and to properly monitor Dr. Blanes' work and professional improvement courses, as well as its employees' negligence

---

[6]   *See* Benítez-Pons, 136 F.3d 54, 59-61 (1ˢᵗ Cir. 1998); Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1154 (1ˢᵗ Cir.1992); Rodríguez-Narváez, 895 F.2d at 46; Torres v. Superintendent of Police, 893 F.2d 404, 407 (1ˢᵗ Cir.1990); Hernández del Valle v. Santa Aponte, 575 F.2d 321, 323 (1ˢᵗ Cir. 1978). This is so because an extrajudicial claim requesting only injunctive relief does not give the defendants "fair notice that [they] might be called upon to defend a damages suit, with different issues not applicable to a suit for injunctive relief."  Nieves Vega, 443 F.3d at 137.

in the treatment and care offered to plaintiff Rivera and any other negligence in which the damages suffered were incurred. As to both defendants, Dr. Blanes and Hospital Menonita, the letter informed the plaintiff's notice of intent to sue and to inform about interruption of the prescriptive term one year for the filing of a damages lawsuit.[7]

Thus, a perusal of the letters timely notified by plaintiff Rivera clearly indicates the nature of plaintiff's claim for damages as to each of the defendants for the same facts and the legal basis for the same. It also notified of the intention to sue for the damages suffered. It is clear from these letters that plaintiff Rivera would be seeking monetary compensation for the physical, emotional and economic damages resulting from plaintiff being forced to undergo several hospitalizations and two (2) separate surgical interventions. Finally, the federal complaint filed stems from the same facts and requests the same relief sought from defendants as to a medical malpractice suit and negligent acts for lack of supervision and health care.

As such, defendants' requests for summary judgment of the complaint as being time-barred are DENIED.

## II.   Liability.

### A.   Uncontested Issues of Facts by Hospital Menonita.

Insofar as any alternative proposition by defendant Hospital Menonita regarding lack of evidence of any action by said Hospital that would amount to a tort, the issues of facts herein below are submitted.

---

[7] Dr. Blanes' reply further reinstates the position as to insufficiency of the extrajudicial claim letter received for lack of specificity as to demand for payment. (Docket No. 89).

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 14

Plaintiff's expert witness Dr. Steven E. Swartz has not mentioned any wrongdoing by the hospital's personnel, aside from Dr. Blanes, nor points to deviations from the standard of hospital care. (Docket No. 73, Exhibit 3, pp. 110-111). Dr. Swartz further stated that even in a correct laparoscopic cholecystectomy, a stricture or narrowing of the bile duct, which is the resulting injury referred by plaintiff Rivera, could occur without any negligence on the part of the surgeon and reasons are unknown. No other physician, except for Dr. Blanes, intervened with plaintiff, and there was immediate referral to Dr. Blanes for his ultimate decision making. (*Id.*, p. 53).

Insofar as Dr. Blanes, Hospital Menonita avers he holds the credentials after having undergone medical studies in Spain since 1992. Dr. Blanes is a Board Certified physician who fulfilled his internship and residency in Puerto Rico in 1993 and 1994, becoming a Board Certified surgeon in 2002 and was again re-certified in 2010. (*Id.*, Exhibit 2, pp. 8, 11 and 21). Dr. Blanes has taken several continuing medical education courses which include laparoscopic cholecystectocmy and received basic training at the University of Puerto Rico for both laparoscopic and cholecystectocmy procedures. (*Id.*, pp. 16-17). After Dr. Blanes' residency, Dr. Vilá Rosario assisted him in several laparascopic cholecystectomies. Dr. Blanes assisted a surgeon in another operating room in repairing an injury to the biliary duct and Dr. Vilá Rosario in three or four other repairs in the biliary duct. (*Id.*, pp. 18-19 and 35-36).

Dr. Blanes assisted regularly to peer review meetings. The Hospital selects the cases to be discussed in these meetings through its Risk Management Department. (*Id.*, pp. 36-

37).  Dr. Blanes has performed over 1,000 gall bladder removals and of those had only three (3) cases of bile duct injury; one before and another after plaintiff Rivera's case.  (*Id.*, Exhibit 12, pp. 63-64).  In all three (3) of these cases, the bile duct injury was identified after the surgery as is in the case of approximately 90% of these injuries.  (*Id.*, Exhibit 2, pp. 114-123; surgery textbooks Sabiston, *Principles of Surgery* and *Schwartz: Principles of Surgery*; Cameron, *Current Surgical Therapies*).   Dr. Swartz, plaintiff's expert, did not contradict the former statement as Dr. Swartz indicated he did not review specific medical literature to render his opinion.  (*Id.*, Exhibit 3, pp. 52 and 110).

Dr. María de los Angeles Echevarría (hereafter "Dr. Echevarría") is the Chief of Medical Staff and Chief of Medical Credentialing and Faculty Director of defendant Hospital Menonita.  She participates in the Board's Executive Committee.  (*Id.*, Exhibit 6, pp. 10, 13). As Chief of Credentialing she responds to Hospital Menonita for her position ensures maintenance of the good function at said institution.   She also responds to the Hospital Menonita's Board of Director.   Dr. Echevarría was a member of the Credentialing Committee in 2008.  (*Id.*, pp. 17, 25 and 26).  The Credentialing Committee is the most important committee of the institution which monitors the quality of care and affords due process to the physicians.  (*Id.*, p. 26).

Dr. Echevarría described the credentialing process as a long, detailed and serious one, which is repeated every two (2) years and entails verifying the applying or reapplying physician is actually trained in the procedures he requests to perform.  These requests were evaluated then by the Chief of the Service, Dr. Angel Quiñones, who evaluates what the

physician is applying for, how many procedures he/she has done; how many procedures are posted and canceled at the Operating Room; how many days are denied by the medical plan after the patient is discharged; also if he/she is active in the Medical College of Physicians, if he/she has all the credentials and continuing education per year or 20 credits per year; if he/she confers with other members of the surgical staff to gather opinions as to physician's standard and quality of care. Dr. Quiñones then sends the requests back to the Credentialing Department. (*Id.*, p. 29).

Back in 2008, all departments at Hospital Menonita had the peer review process where 10% of the cases were chosen at random for quality evaluation. In the case of re-admissions, 100% of the cases were to be evaluated. A full report is given to the Chief of Staff for consideration at the time of re-credentialing. At the present time, this is done every two (2) months. (*Id.*, pp. 33-35). The categories examined are always: admissions, re-admissions, discharge, occupation (census), transfers and deaths. (*Id.*, p. 37). Plaintiff Rivera's case was referred to Dr. Angel Quiñones for an evaluation. (*Id.*, pp. 81-82 and Exhibits 7, 8 and 11).

Dr. Echevarría explained when a patient shows at the ER he/she is asked to identify the treating physician at the Hospital. The protocol is to offer the patient the same physician, who can accept or refuse him/her. If the patient accepts the physician, the same is notified and he/she either shows or gives a phone order. If the physician is out of reach, the ER personnel goes to the on-duty roster of the same specialty. This protocol is explained to the patient in a pamphlet that is handed out which includes a section on how

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 17

to lodge complaints against Hospital staff.  There is also a complaint box placed in the Hospital for complaints to be deposited.  (*Id.*, Exhibit 6, pp. 43-45; and Exhibit 13).

Dr. Echevarría explained the alternative process for a patient to request a change of physician, including while at the ward to the Medical Director who would then offer the patient an alternative physician.  (Exhibit 6, pp. 45-47).  Asked about Dr. Blanes having a higher number of cases discussed in the August 13, 2008 meeting and whether this should raise a red flag,  Dr. Echevarría considered that surgery is the busiest department of the Hospital and, thus, not necessarily so.  The Hospital also had a Risk Management Department so that every one (1) or two (2) months it will monitor whether the quality of care is within acceptable standards.  (*Id.*, pp. 49-50).

There is a review process for evaluation of all re-admissions and a 10% random selection of all monthly cases which have resulted in sanctioning to physicians for their actions, omissions or even attitude with patients.  The Hospital has a failsafe system that works and all falls back to the re-credentialing of the physician or disciplinary measures, if warranted.  (*Id.*, pp. 56-59).  Dr. Blanes was the most active surgeon in the staff and the Hospital performs some 2,300 surgeries per year.  (*Id.*, p. 70).

The evaluation of plaintiff Rivera's case performed by Dr. Quiñones, Chief of Surgery, concluded that quality criteria were met and the situation could not have been avoided.  (*Id.*, p. 82 and  Exhibit 11).

When a patient visits the ER and is subsequently evaluated by his/her physician at the office, the evaluation is not documented on the medical record of the Hospital but at the physician's office. (*Id.*, Exhibit 6, p. 80).

The Hospital has an Office of Risk Management and an in-house counsel. ( *Id.*, Exhibit 9, pp. 17-18). The Office of Risk Management compiles all incidents which may be considered a legal risk for the Hospital, including patients' complaints. (*Id.*, p. 18). Risk Management has a graduate nurse and a corporate supervisor to discern the nature of a possible claim. (*Id.*, p. 20). If a mis-management in any area occurs, including health services, the Hospital takes steps to correct the situation, including re-training of non-medical, allied health professional personnel. (*Id.*, p. 21). The Hospital is accredited by the Health Department of the Commonwealth of Puerto Rico, Medicare and the Joint Commission. It is monitored by the Inspector General of Health and Human Services for compliance with national standards of quality of care. (*Id.*, pp. 22-24). The Hospital does not have ERCP[8] services because it has not analyzed them. Nor does it ever had them and, at the present, it does not have the gastroenterologists specialized in said procedure. (*Id.*, p. 22).[9] When there is a need for ERCP the physician in charge of the patient makes arrangements to transfer the patient to an institution and a physician that he/she may

---

[8] ERCP - Endoscopic retrograde cholangiopancreatography is a procedure that combines upper gastrointestinal (GI) endoscopy and x rays to treat problems of the bile and pancreatic ducts. ERCP is also used to diagnose problems, but the availability of non-invasive tests such as magnetic resonance cholangiography has allowed ERCP to be used primarily for cases in which it is expected that treatment will be delivered during the procedure. [Attachment "A"].

[9] See attached herein documents entitled "Attachment A" and "Attachment B" as required by the Judicial Conference as approved in the March 2009 session for "all internet materials cited in final opinions be considered for preservation" and that [e]ach judge ... should retain the discretion to decide whether the specific cited resource should be captured and preserved." As such, the site's page was downloaded and filed as an attachment to the judicial opinion in the CM/ECF system.

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 19

choose.  (*Id.*, p. 42).   Referral for an ERCP is not an easy task for only few gastroenterologists in Puerto Rico perform them.   The Hospital does not have a gastroenterologist trained to do ERCP at the present time nor by 2008.  (*Id.*).

Dr. Angel Quiñones, Chief of Surgery, is in charge of examining applications for privileges and whether the candidate is worthy of recommendation to the Credentialing Committee and to the Executive Committee for approval of privileges.  Dr. Quiñones has been performing these tasks since 2007.  Dr. Quiñones participates every two (2) months in the Surgery Department's meetings.  These meetings, a.k.a. peer review meetings, are compulsory and all surgeons have to attend at least 60% of them, as well as the Medical Director, the Faculty President, the Hospital Administrator and the Nursing Supervisor. (*Id.*, Exhibit 10, pp. 31, 40 and 43).  Everyone at the meetings rotates to evaluate cases.  The criteria for evaluation is whether the information found is incomplete or if there is some problem in the management. (*Id.*, p. 46).  As to credentialing, Dr. Quiñones looks when and where the physician trained originally, any additional training and if the supporting documents are appropriate.  As to re-credentialing, Dr. Quiñones examines the same data and his/her performance at the Hospital by way of statistics, medical record completion, pertinence of information submitted, attendance to meetings, etc.  (*Id.*, p. 50).

The data bank which reflects all lawsuits in which the surgeon has been named is examined by Dr. Quiñones personally and by the Hospital staff.  The weight given to the evaluation of the lawsuit depends on the nature of the lawsuit.  If it involves something germane or conventional in the procedure, it is given less weight than when it involves

situations in which the performance is totally strange or foreign to what should be the practice of medicine.  (*Id.*, p. 52).  The number of lawsuits is examined *vis a vis* the number of procedures a surgeon performs.  The more procedures, the more exposure and, thus, likelihood of lawsuit.  The number *per se* is not an absolute criteria. (*Id.*, p. 53).  Risks are evaluated by way of referrals from different sources, such as the Risk Management Committee.  (*Id.*, p. 67).  All cases are then reviewed at the peer review committee meetings to verify whether things could have been done differently; if management was appropriate; and whether a complication could be avoided.  It is a dynamic procedure where all members, except for the performing surgeon, give their impressions.  (*Id.*, pp. 68-69).

Gall bladder common duct surgery is a procedure which was requested and granted to Dr. Blanes, as per his residency in surgery at the University of Puerto Rico which is accredited by the Residency Review Committee.  (*Id.*, p. 61). Dr. Blanes was the most active surgeon at the Hospital and hence, from the risk point of view, he would be more exposed to risk.  (*Id.*, p. 96). Dr. Quiñones prepared the Risk Event evaluation of September 9, 2008 which discussed plaintiff Rivera's case. The evaluation included receipt of the entire record and evaluating all parts considered pertinent.  (*Id.*, pp. 122-123 and 129).  Dr. Quiñones evaluated the why and how the original procedures were done as well as the repairs.  Dr. Quiñones concluded, after evaluating the entire record, the procedures were correct and acceptable.  (*Id.*, pp. 111-112).  Dr. Quiñones has had cholecystectomies with various re-admissions, some related to surgery complications and others to the patients' conditions.  (*Id.*, pp. 128-129).

The Risk Event evaluation of September 9, 2008, which discusses plaintiff Rivera's case, was discussed at the next peer review meeting.  (*Id.*, p. 127; Exhibit 11).

### B.       Uncontested Issues of Fact by Plaintiff Rivera.

In regards to Hospital Menonita, plaintiff Rivera avers seeking hers claims for having Dr. Blanes as a member of the Hospital staff due to his negligence and in managing plaintiff's post-operative care, as well as to its failure to properly follow-up the situation during plaintiff's multiple re-admissions and visits to the Emergency Room and to monitor properly Dr. Blanes in light of repeated errors and other legal claims and to continue grating privileges to Dr. Blanes.

Insofar as the claim for lack of supervision and following up on the patient's conditions during her re-admissions and visits to the Emergency Room, as well as the proper following of Dr. Blanes' record to grant privileges at the Hospital, plaintiff submits the uncontested issues of facts summarized herein below.

Dr. Blanes was the only surgeon who attended plaintiff in Hospital Menonita.  When plaintiff showed up at the Emergency Room she was offered no other option but to be referred to Dr. Blanes.  (Docket No. 82-1, ¶¶7, 53 and 54).[10]

The letter sent to defendants by plaintiff's legal representative dated February 4, 2009 mentions "that plaintiff Rivera Vázquez suffered physical, emotional and economic damages."  It is denied the letter did not request the Hospital Menonita to compensate

---

[10]   Plaintiff's Opposing Statemenst of Uncontested Facts appear at Docket No. 82-1, addressing defendants' uncontested and making reference thereof to defendant's Hospital's Uncontested Statements.  Plaintiff presented her opposition to defendants' factual statements at Docket No. 82.  The relevant issues are summarized as necessary.

plaintiff Rivera for the alleged damages for the letter specifically stated plaintiff will be filing a damage claim against the hospital to recover the damages suffered and any remedy at law that it may have. (*Id.*, ¶8; Docket No. 73, Exhibit 4).

Plaintiff admits she never made statements to the Hospital that she wanted to change surgeons. It is clarified that in all the re-admissions and visits to the Emergency Room plaintiff was never informed by the Hospital she could get another doctor. Plaintiff was never given the choice of changing specialists. (Docket No. 82-1, ¶¶9, 10; Docket No. 73, Exhibit 1, pp. 47-49). Plaintiff Rivera admits receiving medical treatment in New Jersey in October 2008. (Docket No. 82-1, ¶11).

Plaintiff Rivera admits her expert witness Dr. Swartz did not point to deviation by the Hospital Menonita in the standard of medical care. As far as defendant Hospital, the head physician of patient Rivera was Dr. Blanes. (*Id.*, ¶¶12-13). Still, plaintiff submits as originally claimed in her letter of notice of intent to sue as well as in the complaint that defendant Hospital Menonita is being sued for failing to carefully select the physicians to whom privileges were granted at its facilities, its negligence to properly monitor Dr. Blanes' work and professional improvement courses and due to its own employee's negligence in the treatment and care offered to plaintiff Rivera in her numerous re-admissions through the Emergency Room, as well as any other negligence for which damages were suffered.

In its opposition to summary judgment on the above issue regarding Hospital Menonita, plaintiff's statement of facts reveals that following the initial surgery by Dr. Blanes, plaintiff Rivera was being monitored by the Hospital, still in excruciating pain but

yet discharged on February 7, 2008.  (Docket No. 82, ¶1.4; Docket No. 82-1 ¶5).  Plaintiff

Rivera went back to the Hospital on February 11, 2008, not to Dr. Blanes' offices, but to the

Emergency Room, extremely dehydrated and in unbearable abdominal pain, with distended

abdomen and elevated billirubin, all considered clear signs of a biliary injury that occurred

during the operation.  Plaintiff was not given the option to seek advice from any other

physician but Dr. Blanes.  (*Id.*, ¶¶1.5-1.6; *Id.*, ¶¶6-7).

Plaintiff Rivera was intervened again by Dr. Blanes on February 16, 2008, having

significant amounts of biliary fluid inside the abdominal cavity and a drainage was placed

to remove the liquid remaining at the hospital for two additional weeks after her visit to the

Emergency Room.  She was discharged on February 25, 2008.  (Docket No. 82-1, ¶¶8-10).

The second surgical procedure performed by Dr. Blanes at Hospital Menonita did not

resolve plaintiff Rivera's surgical situation for she was back to the Emergency Room two (2)

days later with pain and once more referred to the same physician who had failed to

recognize the injury and who had failed to perform a proper second surgery to correct the

initial injury.  Plaintiff Rivera remained at the hospital for eight (8) additional days and was

discharged on March 6, 2008, having been hospitalized then on two (2) separate occasions

and remaining at the hospital a total of twenty-two (22) out of twenty-nine (29) days during

the same month.  (Docket No. 82 ¶¶ 1.9-1.10; Docket No. 82-1, ¶7).

On March 8, 2008, plaintiff Rivera returned to the Emergency Room with

excruciating pain and discharged the following day without anyone at Hospital Menonita

suggesting she be seen by anyone other than Dr. Blanes.  (*Id.*, ¶¶ 1.10-1.11; *Id.*, ¶7).  A week

and a half later, plaintiff was back at Hospital Menonita's Emergency Room, by March 20, 2008, with abdominal pain and vomiting and was discharged the same day. (*Id*., ¶1.12; *Id*., ¶13). Still, another week and a half plaintiff went back to the Emergency Room with jaundice, yellow skin, pain and crying uncontrollably. She asked Dr. Blanes for a referral to another surgeon but was referred instead to a gastroenterologist for additional studies. Plaintiff Rivera was always referred back by Hospital Menonita to Dr. Blanes and no other alternative was offered. (*Id*.).

On April 2, 2008, plaintiff Rivera underwent a third intervention by Dr. Blanes with the purpose to correct the biliary injury. Upon lack of a preoperative percutaneous cholangiogram for the surgery, no information was obtained regarding injury to the left hepatic duct. Additionally, Dr. Blanes chose to perform a choledochoduodenostomy, a procedure performed infrequently because of significant risk of stricture complications. This was the first time Dr. Blanes performed a biliary hepatic duct repair by himself for his only experience was one case in medical school and three (3) or four (4) interventions assisting another surgeon at Hospital Menonita. (Docket No. 82, ¶¶1.14-1.116; Docket No. 82-1, ¶¶16-19). Plaintiff Rivera was discharged three (3) days after this third surgery but less than a month later she was back at the Emergency Room of Hospital Menonita on May 3, 2008, with abdominal pain, being discharged the same day. Once more, on August of 2008, plaintiff was in acute pain with signs of jaundice, eyes and yellow skin, and visited

the Emergency Room.  Applying its policy, the Hospital Menonita called Dr. Blanes. Plaintiff remained at the hospital for three (3) days from August 29 through August 31, 2008. (*Id.*, ¶¶ 20-21; *Id.*, ¶¶ 20-21).

It was not until October 28, 2008, that having plaintiff Rivera moved to New Jersey, she visited the University Hospital and initiated several medical procedures necessary to repair the initial injury and defendants' several failures to provide her with adequate treatment for her condition, caused by the initial and subsequent malpractice and/or negligence.  By March 11, 2009, plaintiff Rivera underwent another surgery, her fourth, at New Jersey, to resolve her medical situation.

Insofar as the Hospital Menonita's uncontested statements as to its credentialing process to grant initial privileges to physicians and their period reappointments, as to Dr. Blanes in particular, plaintiff submits he selected to perform the procedure of choleduchoduodenestomy.  For this, there should be at least five (5) assisted procedures as well as five (5) additional surgeries under the supervision of another physician. (*Id.*, ¶¶36; *Id.*, ¶ 4.4).

Regarding Hospital Menonita's averment as to its peer review meetings by specialty, only a 10% of admissions were reviewed.  Although 100 % of the re-admissions were to be reviewed in the month following re-admissions for not only being out of the norm but also to maintain quality control as alleged, and hospital employees are required to report these cases, including nurses as to Risk Management, not a single of Rivera's re-admissions during the months of February or March –four (4) of them– were presented or discussed

in the peer review meetings of March or April.  It was not until August of 2008 that Ms. Rivera's case was finally discussed.  (*Id.*, ¶¶ 37-38, 40, 43-44, 47 and 51-52; *Id.*, ¶¶ 4.5-5.2).

### C. Discussion: Defendant Hospital Menonita's Liability.

Succinctly, the above uncontested scenario of events has established that plaintiff Rivera attended the Emergency Room of defendant Hospital Menonita in seven (7) separate occasions during a six (6) month period from February through August of 2008. Plaintiff's previous uncontested events showed Dr. Blanes was allowed to perform on  April 2, 2008, on his third intervention on patient Rivera, a choleduchoduodenestomy for the first time being his only experience was one case in medical school and three (3) or four (4) interventions assisting another surgeon at Hospital Menonita.

As summarized right above, plaintiff Rivera has raised contested issues of material facts as presented by defendant Hospital Menonita's on whether during her visits to the Emergency Room of Hospital Menonita on six (6) separate occasions she was given or not the option to discuss her medical condition with any other physician other than Dr. Blanes. There are also contested issues of fact as to defendant Hospital Menonita not following its own process of peer review in plaintiff's case of several re-admissions which could have abated plaintiff Rivera's medical condition and her injuries.[11]  *See, e.g.*, <u>Márquez Vega v. Martínez Rosado</u>, 116 D.P.R. 397 (1985) (recognizing that, in Puerto Rico, "public policy

---

[11]   These disputed issues of fact are deemed sufficient to deny the summary judgment request as to the tort liability of defendant Hospital Menonita, without need to further delve as to the credentialing process that is also raised regarding the rate of lawsuits of Dr. Blanes and the extension of privileges at said hospital as raised by defendant through Dr. Echevarría and Dr. Quiñones on credentialing at the Hospital, its process of granting privileges to applicant physicians and their re-evaluations.  (Docket No. 73, Exhibits 6 and 10; Docket No. 82, Exhibits  9 and 13).

dictates that ... the hospital has the continuous obligation to protect the health of its patients by ... carefully selecting the physicians who ... are granted the privilege of using its facilities ....").

Having examined there are several issues of material fact in controversy in this case summary judgment is not appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Once the moving party has presented evidence of the absence of a genuine issue, the nonmoving party must respond by "placing at least one material fact into dispute." FDIC v. Anchor Props., 13 F.3d 27, 30 (1st Cir. 1994) (citing Darr v. Muratore, 8 F.3d 854, 859 (1st Cir.1993)).

On these contention, having plaintiff Rivera raised sufficient issues of material fact in controversy as to Hospital Menonita's request for summary adjudication as to its tort liability, the request for summary judgment of said defendant is also DENIED.

## CONCLUSION

In view of the foregoing, defendants Dr. Francisco Blanes-Mayan's and Hospital Menonita-Aibonito's requests for summary judgment based on the plaintiff's claim being time-barred are **DENIED**. Moreover, defendant Hospital Menonita's request for summary judgment for lack of evidence insofar as its tort liability in the case is also **DENIED**. (Docket Nos. 71 and 76).

Maribel Rivera Vázquez v. Hospital Menonita, et al
Civil No. 10-1071 (CVR)
Opinion and Order
Page No. 28

IT IS SO ORDERED.

San Juan, Puerto Rico, this 24th day of August of 2012.

                                  s/CAMILLE L. VELEZ-RIVE
                                  CAMILLE L. VELEZ-RIVE
                                  UNITED STATES MAGISTRATE JUDGE